UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                                             21-CR-0405 (KMK)

        -against-

EMIL GARCIA,
                              Defendant.

------------------------------------------------------------------------X

**SENTENCING MEMORANDUM
ON BEHALF OF
DEFENDANT EMIL GARCIA**

                                                  THE QUINN LAW FIRM, PLLC
                                                Andrew C. Quinn, Esq.
                                                399 Knollwood Road, Suite 220
                                                White Plains, New York 10603
                                                T (914) 997-0555
                                                F (914) 997-0550
                                                aquinn@quinnlawny.com

Defendant EMIL GARCIA, by and through counsel, Andrew C. Quinn, Esq., respectfully submits this Sentencing Memorandum. Mr. Garcia is scheduled to be sentenced on October 19, 2021 in connection with his guilty plea to one count of Making False Statements to a Lender (18 U.S.C. § 1014).

**1. Introduction:**

Emil Garcia is the embodiment of the American dream. Mr. Garcia moved to the United States as a teenager, unable to speak a word of English, hoping to escape crime and poverty in his native Dominican Republic. Through hard work and perseverance, Mr. Garcia became a United States citizen and a highly respected and accomplished police officer, father and husband. His background and history are nothing short of inspiring. Regrettably, in 2016, Mr. Garcia submitted letters to Angel Oak Mortgage Solutions, LLC with false information regarding his finances as a part of a mortgage application. Nonetheless, Mr. Garcia made all of the mortgage's monthly payments on time, and has paid it in full with interest.

Mr. Garcia fully accepts his responsibility for his actions – as evidenced by his plea of guilty - and is prepared to accept the punishment that this Court will impose. However, we respectfully request that the Court consider the extraordinary accomplishments Mr. Garcia has achieved as a police officer, many times placing himself in extremely dangerous positions at great personal risk in order to make the community a safer place.

We urge this Court to consider Emil Garcia's many years of extraordinary public service, his devotion to his community, his family and his friends, as well as the impact a sentence of incarceration will have on his ability to care for and support his wife and children. A non-custodial sentence will permit Mr. Garcia to remain at home and provide for his family, and allow him to continue his good work in the community.

2. **Procedural History and Facts:**

Mr. Garcia voluntarily surrendered to the United States Marshall for the Southern District of New York on June 17, 2021, following a lengthy investigation by federal authorities. He was arraigned on a felony information charging one count of Making False Statements to a Lender (18 U.S.C. § 1014) and released on a One Hundred Thousand Dollar ($100,000.00) unsecured appearance bond with the standard travel restrictions. On June 24, 2021, Mr. Garcia entered a plea of guilty to the sole count in the information before United States Magistrate Judge Paul E. Davison. Sentencing is scheduled for October 19, 2021.

3. **Presentence Investigation Report**

The Presentence Investigation Report (hereinafter the "PSR"), prepared by the United States Probation Office, calculated the advisory guideline level as follows:

| | | |
|---|---|---|
| i. | Base Offense Level §2B1.1(a)(1) | 7 |
| ii. | Specific Offense Characteristic | 0 |
| iii. | Victim Related Adjustment | 0 |
| iv. | Adjustment for Role | 0 |
| v. | Adjustment for Obstruction §3C1.1 | +2 |
| vi. | Acceptance of Responsibility §§3E1.1(a) and (b) | -2 |
| vii. | Total Offense Level | **7** |

In accordance with the Federal Sentencing Guidelines, based upon a total offense level of 7 and a criminal history category of I, the guidelines range is 0 to 6 months. We have agreed with the Government that this is the applicable guideline offense level.

4. **Analytical Framework:**

As the Court is undoubtedly aware, on January 12, 2005 the United States Supreme Court inexorably altered the doctrinal landscape of federal sentencing with its decisions in *United States v. Booker,* 543 U.S. 220 (2005). The Court in *Booker* made it clear that United States District

Courts are no longer bound or restricted by a mandatory and unwavering application of the United States Sentencing Guidelines.

When sentencing a defendant, the court must consider the applicable Guidelines offense level, which is advisory, and the factors enumerated in Title 18, United States Code, Section 3553(a).[1] *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Corsey*, 723 F.3d 366, 374 (2d Cir. 2013). The sentence imposed must be "sufficient, but not greater than necessary" to comply with the purposes set forth in Section 3553(a)(2). 18 U.S.C. § 3553(a). The "enhanced scope of a sentencing judge's discretion in the post-Booker world of advisory Guidelines" permits a sentencing court to consider:

> the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness. *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

Therefore, while the court must consider the Section 3553(a) factors, it has discretion to impose a non-Guidelines sentence based on factors not specifically articulated in Section 3553(a),

---

[1] Section 3553(a) provides that when sentencing a defendant, the court must consider a number of factors:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
(3) the kinds of sentences available;
(4) the kind of sentence and the sentencing range established for --
    (A) the applicable category of offense committed by the applicable category of the defendant as set forth in the Guidelines – (i) issued by the sentencing commission . . .;
(5) any pertinent policy statement
    (A) issued by the sentencing commission . . .;
(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

as long as the resulting sentence is reasonable. 18 U.S.C. § 3553(a)(1); *Gall v. United States*, 552 U.S. 38, 49-51 (2007).

Applying the the factors enumerated in 18 U.S.C. § 3553(a), it is apparent that a non-custodial sentence is "sufficient, but not greater than necessary" in this case. the Court to consider the following factors and analysis and fashion an individualized sentence based upon the facts and circumstances of the instant case.

5. **Offense Characteristics:**

Mr. Garcia fully appreciates the seriousness of the crime for which he stands convicted – making false statements to a lender. Mr. Garcia has paid the mortgage in full, on time and with interest.

A. **Family and Personal History**

Aside from this incident, Emil Garcia's background and history are nothing short of inspiring. Mr. Garcia, forty-five (45), was born and raised by his mother in one of the poorest and most dangerous areas of the Dominican Republic, and arguably the world. His neighborhood, *Las Canitas* near the Capital District of Santo Domingo, is sadly renowned for its violence and poverty. Controlled by street gangs, primarily *Los Trinitarios*, *Las Canitas* is littered with pockets of extreme violence, a high murder rate, a scarcity of jobs, a failing education system, and very little opportunity. From a young age, Mr. Garcia committed to make himself a success and work his way out of the slums of *Las Canitas*, and committed to assisting his mother and siblings escape the crushing hopelessness of the Capital District.

Mr. Garcia began working hard as a student and athlete in the hope of bettering his circumstances. He attended the Angels-Dodgers School, a full-time baseball academy where he lived on campus with other potential major leaguers since the age of ten years old. Like many

Dominicans, he dedicated himself to baseball believing that it was the fastest route out of the crime and poverty of *Las Canitas*. He quickly ascended in the highly competitive baseball program, which was essentially run by professional scouts, and finished playing semi-professional baseball with many players who eventually played in the Major Leagues: since childhood, he was a teammate of David Ortiz (a/k/a "Big Papi" who he remains friendly with), and Hipolito Pichardo (formerly of the Houston Astros). Mr. Garcia was actually drafted by the Dodgers organization in 1992; however, with no guarantee that he would make the major leagues and emigrate to the United States, and the need to provide financial support to his family, he accepted a job for the Coca Cola Company, travelling to major sporting events and marketing their products.

Finding the opportunities for real success extremely limited in the Dominican Republic, Mr. Garcia applied for and received travel papers for the United States. He legally emigrated to the Bronx, New York in 1994. At the time, he spoke no English whatsoever. Typical of his will to succeed, he enrolled in ESL classes at Bronx Community College (BCC) and studied hard. He quickly learned the language and applied for his GED. He passed the test – in English – within a year. In addition to taking on his scholastic responsibilities at BCC, Mr. Garcia joined the New York Police Department (NYPD) Auxiliary, where he volunteered twice a week for about two years.

Mr. Garcia has not forgotten his roots, as evidenced by his charitable acts. Mr. Garcia has donated (in bulk) baseball, basketball, volleyball and other uniforms and apparel for the *Club Varias Luces*, in *Las Canitas*, which he would then send to the Dominican Republic for distribution to impoverished youth his old community. Mr. Garcia also sent uniforms and apparel to the Star Boxing Club in Reading, PA, a club for foster kids. He would also purchase sweaters and other

clothes online, and donate those materials to *La Primera Iglesia del Buen Pastoral* in Haverstraw, New York.

Mr. Garcia has not only demonstrated great concern and dedication to his communities and the public, but he is a devoted husband, father and son. Mr. Garcia has been married to his wife Angela Galan, a retired CUNY Police sergeant, since 1998. They live together in Rockland County, New York. They have three children, ages 27, 22, and 20. The children have learned the values of hard-work and love of country that their father embodies: his eldest daughter lives in the Bronx, is attending Lehman College, and works full-time. His son works full-time at a car dealership. His younger daughter has followed in his footsteps, and is a Maryland State Trooper.

Moreover, despite the fact that his mother still lives in the Dominican Republic, Mr. Garcia cares for her and assists with her living arrangements. Mr. Garcia takes frequent trips to the Dominican Republic tend to his elderly mother's needs, as he is the only relative of hers who can do so.

### B. Experience in NYPD and Involvement in the 9/11 Response

In 1996, Mr. Garcia applied for and was accepted into the NYPD Auxiliary Police Program in 1996, and into the NYPD Police Cadet Program in July 1998. His first assignment was PSA 7's Domestic Violence Unit. He worked as a cadet investigating domestic incidents, performing home visits, enforcing orders of protection, assisting in the arrest of assault suspects and data entry. While volunteering as a cadet, he also found various jobs to pay his bills and helped his mother emigrate to the United States. He was also studying for his citizenship test, which he passed on his first attempt, becoming a United States citizen in March 2000.

Upon becoming a United States Citizen, Mr. Garcia applied for and was sworn in as an NYPD police officer in September 2000. He completed his academy training and graduated in

May 2001. He first assignment was to the NYPD's 33rd Precinct, where he was a rookie cop when the terrorist attack on the World Trade Center took place. Despite being off-duty on 9/11 and the following day, Mr. Garcia headed to the site and spent literally the first twenty-four (24) hours after the attacks digging through the rubble searching for survivors; he was forcibly removed from the site by a Captain, who ordered him to go get sleep. He returned to the 33rd, where he slept for several hours and returned to Ground Zero to continue the search for survivors. He continued this pattern of working 16-18 hours each day and sleeping at the 33rd precinct for twenty-eight (28) days, taking only a single day off (9/30/01).

As a result of the extraordinary number of hours he spent at Ground Zero, Mr. Garcia has been diagnosed with medically-associated and mental health conditions, and has been approved for benefits under the James Zadroga Health and Compensation Act (42 C.F.R §88.15). He has been diagnosed with Post Traumatic Stress Disorder, Anxiety, Gastroesophageal Reflux Disease, Chronic Rhinosinusitis, and Obstructive Sleep Apnea.

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████

**C. Accomplished Career in the Westchester County Police Department and Work with Federal Agencies**

After serving for seven years in the NYPD, Mr. Garcia transferred to the Westchester County Police Department (WCPD), and was sworn in on June 4, 2007. His strong work ethic and desire to excel quickly led to his becoming a highly decorated and widely respected police officer. While working with the WCPD, Mr. Garcia attended narcotics interdiction training across the country and became a trap expert. He had the highest number of narcotics arrests in New York State for three consecutive years, 2010, 2011 and 2012. While on patrol, he routinely made gun arrests, averaging approximately seven (7) per year. Indeed, on October 26, 2012, he was honored by the Westchester Hispanic Law Enforcement Association, where he was presented with nine (9) awards for bravery and excellent police work.

[redacted]



[Redacted content]

**6. Sentencing Considerations**

As a result of *Booker* and its progeny, no longer are courts *required* to impose a sentence "within the range" as provided for in the United States Sentencing Guidelines and as previously required by 18 U.S.C. §3553(b)(1). In addition to the Guidelines, which are now advisory, courts must take into consideration the sentencing factors detailed in 18 U.S.C. §3553 when making a sentencing decision.

## A. 18 U.S.C. § 3553

Title 18 U. S. C. A. §3553(a) provides:

> Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant;
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>     (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense."

Mr. Garcia's extraordinary background of public service, his current family needs, and the certainty of rehabilitation, support Mr. Garcia's requested sentence.

**B. History and Character of the Defendant**

As stated *supra* and evidenced by his lifetime of public service, Mr. Garcia has been devoted to his community and to his family. In the short time since his guilty plea, Mr. Garcia has had ample time for the kind of reflection and introspection that only those who face the prospect of losing all that is dear to them can experience. This self-evaluation is critical in that it serves as indicia of the type of citizen that Mr. Garcia will be beyond this incident.

Mr. Garcia took a great deal of pride in all that he accomplished during his two decades as a law enforcement officer. Mr. Garcia has placed himself in grave danger over the course of his career to get drugs and dangerous firearms off the streets. He suffers, and will continue to suffer, medical maladies from his service at Ground Zero. He escaped the poverty of his native country to build a life for himself and his family, who are now paying back by pursuing military and law enforcement service. We ask the Court to carefully consider his character and background when determining the appropriate sentence.

## **CONCLUSION**

For all of these reasons stated, we respectfully request that the Court sentence Emil Garcia to sentence that does not include incarceration, and allow him to continue to return to his life as a father, husband, son and law-abiding citizen.

Dated: White Plains, New York
       October 6, 2021

                                        Respectfully submitted,

                                        *Andrew C. Quinn*
                                        _____
                                        THE QUINN LAW FIRM, PLLC
                                        Andrew C. Quinn, Esq.
                                        399 Knollwood Road, Suite 220
                                        White Plains, New York 10603
                                        T: (914) 997-0555
                                        F: (914) 997-0550
                                        aquinn@quinnlawny.com

To: AUSA Mathew Andrews *(via ECF and Email)*